Good morning, everyone. We have two cases on the calendar this morning, and the first one is Sociedad v. Webuild, appellate number 24-3005. Thank you, Justice Schwartz, and may it please the Court, Miguel Estrada for the appellant. This case, in our view, turns on two propositions, both of which we believe are well-established in the law, and both of which we believe the district court got wrong. The first one is that a federal district court has quasi-unwrapped jurisdiction to confirm a previously rendered judgment or an arbitral award against the loser in the previous proceeding if the loser has property in the district. And you're relying on footnote 36 of Schaeffer for that? I am relying on footnote 36, which, in our view, reflects a recognition of longstanding law. But the longstanding law at this point, I think you'd agree, counsel, is minimum contacts. We haven't heard about Schaeffer and footnote 36 since the 1970s, and the last word I can find on it is Justice Scalia's admonishment that all suits against nonresidents are on the same footing, regardless of whether a separate Latin label is attached. And that was way back in 1990. So how is it that this is still a good standard? I will respectfully disagree with you by citing two Supreme Court cases that are subsequent to Schaeffer, Your Honor, Burnham and Mallory. And I will read to you from the plurality opinion of Justice Gorsuch in the Mallory case at page 141. And this is what Justice Gorsuch has to say. This court has previously cautioned litigants and lower courts against misreading Schaeffer as suggesting that International Shoe discarded every traditional method for securing personal jurisdiction that came before. We find ourselves repeating the admonition today. And both Mallory and Burnham had to overturn lower court judgments, both of which had read Schaeffer and International Shoe as occupying the field and discarding methods of jurisdiction that had been recognized pre-Schaeffer, and in which this court in one case, in the Nehemiah case, which was cited by the district court in this case, had jurisdiction. And the Pennsylvania Supreme Court in the other case, consent statutes in the Mallory case, had been overtaken by the minimum context inquiry. And what the Supreme Court in Burnham and Mallory said was International Shoe is a test that is applicable, and it does bring considerations of justice to the adjudication of primary liability. Let's assume footnote 36 is context, not dicta. Let's assume it continues to survive today. Why is the orbital award in this case a determination by a court of competent jurisdiction that fits within the footnote? I'm very glad you asked that question. The specific context that was being addressed by the court in Schaeffer, both in the page to which the footnote is appended and in footnote 36, was what to do about full faith and credit and the possibility that there may be a previously adjudicated liability, say, for example, in Ohio, in which the winner comes to the court in the state, for example, and wants to, say, attach into the property. And the court says, well, sir, we're not going to keep the winner in Ohio from relitigating the merits and ask for him to establish minimum context again just to execute on the property. The liability has been already determined. Now, what the district court said about that is, well, maybe that's full faith and credit. This is not a judgment. What the district court failed to apprehend is that the New York Convention since 1958 is a treaty of the United States that has been implemented by federal legislation. And in our context, it is a full faith and credit provision for international orbital awards that puts it on the same footing as the full faith and credit clause that the Supreme Court was considering in Schaeffer. My position is that Schaeffer is a full faith and credit and, therefore, applies to judgment issued by courts. The New York Convention's equivalent provision applies to arbitral awards, and, therefore, you're substituting out a court of competence jurisdiction for an arbitral award issued under the New York Convention. Exactly. And some of the cases that we have cited do recognize that. We have, you know, we have cases where, for example, in the Ninth Circuit, this has been applied in the Cerner v. I. Capital and the Glencore Grain case. We also cited the Dardana case from the Second Circuit where the case had been dismissed by the district court, you know, the late Judge Batts, and the case went to the Second Circuit. And one of the things that the Second Circuit said in the closing passages of the Dardana case, if you look at it, is they looked at the restatement of the foreign relations of the United States, and in particular Section 487, and that section does recognize the convention as mandatory law in this country and says that the courts have to apply it. And I understand where you're going with that. My question, my next question, though, is if we accept your position, what does this do for domestic arbitration awards? Are foreign arbitration awards getting some kind of better preferential treatment? No, because we also have the FAA in this country, right? I mean, we have the obligation under domestic law as well to have, you know, the enforcement of those awards. So if the case in front of us, if the award your client seeks to enforce was a U.S. domestic arbitration award and you were seeking to collect assets from rebuilt and the same theory was at play, how would we be able to apply footnote 36? Do we have to have a judgment to confirm that award first? I mean, I think that there are different questions of subject matter jurisdiction with respect to the FAA because, you know, the New York Convention being a treaty, it provides subject matter jurisdiction, which is not always the case with the FAA. This is Judge Schwartz's point. It gets you into the subject of arbitration, which obviously takes you out of the word that's used in the footnote, which is a court of competent jurisdiction. If I follow your argument, it's, well, they use that in the context of a full faith and credit discussion, and so really that's the principle that was animated there. But as Judge Schwartz is indicating, if we start assuming that court also means arbitrator, well, then we are getting into a whole host of considerations that Schaeffer didn't consider, right? I'm actually sort of taking a slightly different paradigm, and I'm taking you back a little bit longer, Judge Matee, because I am not reading the footnote as creating an exception. No, you're just recognizing that you're doing it. I am recognizing, you know, the common law, and I could go back, say, for example, to 1917, to one of the cases that we cite in our brief, you know, the Pennington case, an opinion by Justice Brandeis, where a wife sues for a divorce, gets a judgment, gets also alimony, and there is an account in a bank account in Ohio. She wants to get her alimony from the bank account. The husband doesn't live in Ohio. He then wants to get his money out, and the Supreme Court gets the case, and, you know, they hold that the wife had correctly executed on her alimony award on the bank account in Ohio, even though the husband was nowhere near in Ohio. And we think that that is good law as recognized in the footnote in Schaeffer. And what I'm saying is – But that principle is re-recognized in Mallory. Correct. And I am further saying that if you recognize that the court was saying that that sort of assertion of quasi-arraigned jurisdiction was long recognized before Schaeffer and undisturbed, then what the convention and the federal statute that implements it does is create a full faith and credit mandatory jurisdiction as a matter of federal law. That doesn't answer the question about how do we deal with domestic arbitration. But it's also not raised in this case because – Because we have the New York Convention, and it's – Correct. And it gives you subject matter jurisdiction in a way that in some of those cases you would not necessarily have, is what I'm getting at. The New York Convention says that you can confirm an award against any other party to the arbitration. WeBuild wasn't a party to the arbitration. The second question I was going to raise before your perceptive question. And so the second proposition I was going to say on which this case turns is that in deciding challenges to jurisdiction, whether it be personal or subject matter, a federal court has the power to decide questions of successor jurisdiction. And so we also think that that proposition is well established, not only in this circuit, but also in the law of other circuits. I will start by citing your – Right. Correct. And it's – Okay. Okay. I don't disagree with that proposition. And I think it is a proposition we have to establish to get, you know, the relief we're seeking. The disagreement I have is that I think that, you know, the Court of Competent Jurisdiction is the District of Delaware. And the reason for that is this. To go back to my Ohio example, if I obtain a judgment, say, against Facebook, and they change their name to Meta, and I want to enforce it under the full faith and credit in Delaware, and they come in and say, we're not Facebook, we're Meta, that's somebody else, and you don't have a judgment against Meta, and if I am prepared to demonstrate it's the same company, you just change your name, I don't think I'm required to go back to Ohio and get a judgment in the name of – Okay. No, we are not. So let me – well, they are. They are – if I could take just a minute, because I think this is probably one of the most important issues in the case, and I think it has been horribly obfuscated. It is controlled by present in this and other circuits, and it's not novel. And I will start by citing, you know, the Nazi era cases from this court, Worgen versus Kardaskel, which we cite in our brief. And if you recall the fact, it was a challenge to personal jurisdiction, to the seizure of property in the Nazi era. And what happened was the party sued were present-day companies that were alleged to be the successors by merger to companies that existed in the Nazi era. And the answer that the panel of this court gave, a panel that included Justice Alito, by the way, was not, oh, you don't have a judgment of any German court that these are now the successors. It was an examination by this court whether they in fact succeeded by merger. And what this court did in determining personal jurisdiction was to say some of them were and some of them were not, but it did the analysis. And so it was a determination by the court in this country, and in particular by this court, whether the documents that were in front of the court in fact established jurisdiction over the defendant that was alleged to be the real debtor. And was that because the authority of the court to make that decision was because there was a motion to dismiss for lack of personal jurisdiction? Correct. It was. And it was an affirmative defense asserted that the district court had to dismiss. And because a court always has the jurisdiction to determine its own jurisdiction, if the counter to the claim there is no personal jurisdiction is you are the same debtor, you just changed your name, or you're the successor by merger. The answer to that, no, I mean, I would like to think I'm charming and engaging even if nobody else says that. But the answer goes to the one I gave to Jeff Meekey, which is it is an obligation that this country has to make a decision on its own. We are a signatory that obligates us to recognize and enforce these arbitral awards. If I demonstrate that, in fact, they are the successor by merger to the loser in Chile, our country, as a signatory to the treaty, is obligated to recognize and enforce the arbitral award in Chile, unless they establish one of the defenses enumerated in Article V of the treaty. So if we agreed with you, and this was remanded to the district court to determine the question of successor liability in the first instance, and the court finds you're not, you agree, that's it. Well, I think we would have an appeal subject to the judiciary. But you would agree there's no other basis for jurisdiction. Right. I mean, either they are successor by merger or they're not. Yes, absolutely. But I think, you know, the court did, you know, the wrong analysis. It assumed wrongly that Schaefer occupied, you know, the field and had, you know, displaced a traditional method of asserting jurisdiction when the merits had already been determined. And, B, it refused to engage on the question because it read the footnote too narrowly and failed to realize that the New York Convention imposed an analogous obligation to do the same analysis as in proof-based and credit cases. And I would like to reserve my four minutes if the court will indulge me. Let me just see if my colleagues have any further questions at this point. Okay. Thank you, Your Honor. Thank you. May it please the Court. Andreas Frischknecht for Applee Rebuild SPA. Perhaps somewhat unusually in light of the discussion that just occurred, I may start, actually, even though we say this court shouldn't reach the merits, with a brief description of what the merits dispute is about because I think it actually provides context for the discussion of jurisdiction. The critical issue that SCMS consistently ignores throughout its briefs is the impact of Astaldi's ongoing bankruptcy proceeding in Italy, known as the Concordato, on this transaction. Under the terms of the contract between Astaldi and Rebuild, Rebuild assumed Astaldi's debts, first of all, only to the extent they related to the continuing business, which is also known as the spun-off assets. But even as to the continuing business, Rebuild acquired those debts only to the extent they weren't discharged in the bankruptcy. I mean, all this is – maybe this is all right, but we're not a fact-finding court, so why wouldn't this be something best suited to the district court's competency? I would begin, Your Honor, by saying that this is not like a corporate name change. It's not even a corporate merger. It's not a purchase of all assets and liability. It's a very complicated transaction, again, intricately, inextricably linked to the bankruptcy. So it's a very – And the words complicated and intertwined with bankruptcy are the very things we tend to avoid as a court of review. Your Honor, I'm not suggesting that this court should review those issues. I'm suggesting it's not as simple as Mr. Estrada portrayed it. It's not – I think that's the point that Judge Mady is making, is that this record is laden with expert opinions about how to construe those various documents and those various milestones, whether there was even a dispute that forgave everybody's participation in the contract to build the hospital before the arbitration, therefore they wanted debtor at a particular point in time, et cetera. These are all fact questions that if we were to conclude that we need – that a district court should have looked at the successor issue, shouldn't that court be looking at that issue? Well, I think the important point to make here is I think this is actually not – first of all, it's not a case about successor jurisdiction. If I said successor, I meant successor in the context of a successor corporate entity. The question, though, is whether –  Excuse me, Your Honor. That's okay. Go ahead. The question is whether the district court could reach that issue. I think that's really the central key question that's presented here. And the argument from the other side is that this is a case of successor jurisdiction. It is not a case of successor jurisdiction. Let me just try and explain. It's a case of trying to analogize a case into the Schaeffer footnote that isn't analogous, I would say. Why? Because the Schaeffer – so Schaeffer viewed as a whole has the general rule, which I think is uncontested, that the minimum contact standard applies to quasi-REM jurisdiction. Then there's a footnote that essentially says if this defendant's liability has been adjudicated such that there is no liability left to determine, the issue has been resolved completely, then there is a – a stall of these liabilities has been determined in the arbitration, but not our clients. Whether it's a success or an interest is – But for a due process perspective, Judge Fischer, the question is has this defendant had its day in court or in arbitration or not? And Weebill has not. So you're agreeing that a court within the Schaeffer footnote is also an arbitration proceeding? I don't think we – I think that –  This court has never addressed that issue, but I think it has been generally recognized that an arbitral tribunal would be considered equivalent to a court in this context. I don't think that's the argument we're making. I think that there has to be an adjudication of that defendant's liability. Otherwise, that defendant deserves to be treated like any other. In the sense that it's a determination of liability, that's always enough, of course. That's a substantive determination of liability, but that's exactly what Sinocam, which again, the – SCMS in their brief has completely refused to engage with Sinocam, which says very clearly that the SINOCAM is a liability.     The general rule is a court cannot decide the merits without first determining that it has personal jurisdiction. There are some exceptions to that, one of which is successor jurisdiction, which this case is not, because successor jurisdiction says, did the predecessor engage in contacts with the forum that then can be imputed to the successor? Here, Estaldi had nothing to do with Delaware. The subsidiary has nothing to do with Delaware. Your Honor, is what a merits question? Successor liability, Your Honor, is a merits question. Successor liability, yes. And it's a completely distinct concept from successor jurisdiction. It's not the same thing at all. I understand. If we billed as the successor legally to Estaldi, then do you agree that jurisdiction would be proper? I don't think that's correct, Your Honor, because it's the order of operation that's just reversed. Let's assume for a moment. I hear you sort of saying there's no way there's jurisdiction because they're not the successor. And we say, well, we don't really know that. What if they were? And so what if they were? What if we had a determination that they are the successor from a court of competent jurisdiction? I mean, I think the answer has to be yes, there's jurisdiction. If we had it, you know, that's – so we billed as commenced this proceeding in Italy for a declaratory judgment seeking exactly that. And if the Italian court were to rule, that Italian judgment could be brought to the United States and they could seize the billed property.   So your argument is that's what Schaefer demands. It doesn't permit the district court in Delaware to make that same determination in order to assure itself of its own jurisdiction. I wouldn't go so far as to say that Schaefer demands that, but Schaefer in the footnote permits it. It's dicta, but it's Supreme Court dicta. This court has never actually applied that dicta, but I don't think that's our argument that that would not be correct. If there were an Italian judgment that says we billed as a successor and it's liable – So Schaefer contemplates that, but we shouldn't embrace that contemplation in this case. No, as I say, I don't think we're actively urging the court to adopt that position, but we recognize that other courts have done so and we're not substantively arguing against it is the best I can say. The key point, though, again, is the court of competent jurisdiction. That is exactly not what has happened here. The arbitral tribunal has determined that there is a debt owed by someone, owed by Estaldi, but no one has ever determined that we billed as the successor, and that is a question of liability. It's not technically a cause of action, but it's a question of liability. Very important question, Your Honor. I should be very clear, we moved in the alternative in the district court for dismissal on four nonconvenience grounds, and then we also briefed the merits because that was how it was arranged. The court only reached the jurisdictional question, and so obviously our position is also if there were no jurisdiction, of course the court could affirm on this basis, it can affirm on any basis in the record. It's fully briefed. We think this is actually a paradigm case for four nonconvenience dismissal in large part because this is not a quote-unquote classic award enforcement proceeding. The Second Circuit in the CBF case that we discussed in our brief has made clear that the New York Convention does not speak to the issue presented here of whether an arbitral award can be enforced against a party that is not the debtor, that has not been named debtor. But if you take cases that are in the same view, there are other cases where they approved the very process that their adversaries are advocating, that is for in the context of enforcing or recognizing foreign arbitration proceeding, there could be inquiry on alter ego. CBF talks about that. The doctor from the Second Circuit talks about that, and First Investor from I think the Fifth Circuit talks about that. So there's cases out there at the circuit level that contemplate the very thing their adversaries are asking us to require the district court to engage in. That's a very important question, Your Honor. This is really critical. There is no court, there is no authority that has ever been cited where a court is asking what SCMS is asking this court to do, which is to find jurisdiction to adjudicate a defendant's contested liability for a foreign judgment or an arbitral award where the defendant was not the party involved in the proceeding and solely because it owns property in the jurisdiction. If there is a personal jurisdiction question... But that's your distinction between Producto and the two cases I mentioned, is that no one can get class in terms of jurisdiction as opposed to Procter & Gamble. That's correct, Your Honor. And Schaefer does control this entire field in its totality. It's true that Mallory and elsewhere in the court, the discipline court, have made clear that not all principles of preexisting classical jurisdiction were abrogated by international shoe, but no one has ever questioned that Schaefer controls. And for purposes of argument, I will accept that the footnote is also sensible in a sense, but we're not in the footnote. So within the universe of Schaefer, there is a general requirement that you have to show minimum contacts in order to get property-based claims under the jurisdiction, and there are no minimum contacts. There are no super-minimum contacts whatsoever. So my question to you has to do with CDF and Procter & Gamble and first investors. Each of those cases involved inquiries into life success and liability, life alternative, et cetera. How are you distinguishing that scenario from this scenario? Are you saying because they're focused on personal jurisdiction, you're not clausing in them? I think that's a big part of the topic, and I do have to make a very clear distinction between successor jurisdiction and successor liability. No, I'm not providing the same jurisdiction. I'm talking about successor in interest. I'm not overpointing you. I'm asking that when you're doing alternative analysis, those cases aren't talking about successor jurisdiction. They're talking about alternative that may be predefined in the suit and may be imposed in action. They may be filled with invalidation. It's an alternative of the latter. They're talking about alternative in the jurisdictional context, which is, again, you can test both of those. I am focused on jurisdiction. I'm not doing it. So they're talking about alternative, but the purpose of jurisdiction is still alternative. I'm asking that because you're asking me to decide what the purpose of jurisdiction is without the successor in interest. And there is no case that I've ever tried that in the corporate context in terms of a successor. Then, then, then, the relevance of the alternative is the property base. The property base is clearly not in line with jurisdiction. Let me try to classify it another way. The way I look at it is this footnote in shape of a succession says there's a class of cases for which there is no real corporate jurisdiction requirement out in the back of this property. If, once in time, there were jurisdiction requirements, exactly, that is a completely different, preexisting, the way I look at it is vastly different from the general rule, which is in the national sheet. And that limited rule, which I think essentially coincides with the collection of national mapping requires that that particular party is degenerate and cannot reasonably find otherwise. Then you're in the footnote, and the alternative, I think, where you're trying to show that that's important. This is the case in which there's no general jurisdiction. Well, I say this is sort of leading the footnote like a statue in claim, but I think the footnote is worded the way it is. It's not like where the liability has been determined in the abstract. It says where a court of property jurisdiction determines that the defendant is a debtor of the project. That's what the footnote says. There's no court of property jurisdiction that determines that you're a AOB. Thank you. Just to add a couple of points. Counsel for the other side said that his client's liability has never been adjudicated, and whether the defendant is the party is the issue to be adjudicated by the district court. We're claiming that they are the debtor, and the district court could consider, just maybe, that we're wrong. But as Judge Schwartz pointed out, cases are usually superior from this court and others, where even when the identity is formally separate, as in alter ego cases, you can claim that in the contemplation of fact the parties are the same because they don't observe the corporate formalities, and that you can, in fact, enforce the judgment against the subsidiary or the parent, and that's allowed. If they have legally merged, surely that's allowed as well, as the case I cited earlier shows, the Nazi-Georg cases. As I said, they form none. We also opposed it. I will point out that, again, because of the New York Convention, it is not the case that Italy is an available forum for the U.S. to compose the treaty obligations, and the reason cases like this are filed in the forum where the debtor, the Italian company, we don't have property, is because the enforcement goes to where the property is. If someone were allowed to defeat the adjudicated liability by filing an action in their home country, where they can't get the protection of the Chilean company, that is our caution, and so there is a matter pending, form none now, you would defeat the New York Convention in every case. And finally, there is this question about whether this is really going to be sort of complicated or not complicated for their experts. You can actually just look at one page of their own expert report, which is A615, where their experts sort of acknowledge, yes, yes, this contract was transferred in the spinoff, but our understanding, this is the word that they actually use, is that we would get the upside if we won, not that we would be stuck with paying if we lost. And so their interpretation of Italian law turns out that we got the assets and we thought that we would get your cash if we won, but we wouldn't have to pay you if we lost. How do you respond to one of his points, as I understand it, is the inquiry on successor and interest is tantamount to the liability determination, liability responsibility determination, not the liability underlying debt, as we already know that's been mentioned. And that is a fundamental categorical error. He keeps using the word the merits. The merits actually are who was wrong with respect to the construction contract in Chile. Those are the merits. The merits was, was the construction of the bonus hospital fouled up and by whom? What's the merits question before the Delaware court? The merits question is, are you the debtor? And are you the person who lost in Chile? And they say, no, it's not me. That's a different company. You got the wrong guy. And that's not the merits. You know, the merits of the adjudication were adjudicated in Chile. Did you comply with the construction contract? Yes and no. My point is that, well, his point I think is that the who's the debtor question will determine whether or not that property is taken to satisfy the debt that was found to exist. Sure, but their answer in the district court is a mistaken identity sort of claim. It's not a merits claim. It is saying you got the wrong guy. And that's not really a merits question. That is, you said, you know, the wrong person. I am here to show the right, you know. And I think they're entitled to show that. And I am, you know, required to show in a court of competent jurisdiction, the District of Delaware, that I have the right guy. In fact, they're a successor by merger. I cannot succeed in my case if I don't show that justicer. And I think we've shown that. But the court of competent jurisdiction that has to do that is the District of Delaware. And once we do that, I think we're entitled to collect on our judgment. Thank you so much. Thank you. We thank counsel for their helpful briefs and the helpful arguments we received today. So thank you. We ask a transcript of the proceeding be prepared. And we ask each side to just look across the desk to transcript of your argument. So thank you. And we'll take the matter under advisement.